MARTIN, Chief Judge.
Defendant appeals from judgment imposing an active sentence of imprisonment entered upon his conviction by a jury of one count of first degree arson and one count of second degree arson.
The evidence at trial tended to show that on 3 April 2000, Officer Douglas Hord of the Gaston County Police Department responded to a call at about 11:30 p.m. regarding a house fire at 429 Queens Court. After speaking to an individual at the site of the fire, Officer Hord located defendant lying on the porch at 341 Queens Court. Officer Hord testified that defendant told him that while at his home at 429 Queens Court, he argued with James Curry (Curry), Gerald Williams (Williams) and Billie Teasley (Teasley) over a pool game. The argument escalated into a fight between defendant and Curry. After Curry cut defendant on his arm and back, defendant ran into his bedroom, locked the door and started a fire to a pillow in his room.
According to Officer Hord, defendant was "slightly combative and intoxicated" at the time of their conversation. He obtained a written statement from defendant; however, it did not mention the fire, only the pool game and fight.
Sergeant Dean Henderson of the Gaston County Police Department also responded to the call at 429 Queens Court. He accompanied Officer Hord to 341 Queens Court and was present when Officer Hord questioned defendant. Sergeant Henderson testified that he heard defendant say that "James Curry cut him with what looked like a straight razor" and that Williams and Teasley had hit him with their hands and feet. He also heard defendant say that "he started a fire in the back bedroom in order to get away from Curry, Teasley and Williams." According to Sergeant Henderson, defendant later said "they" started the fire but he didn't say exactly who he meant by "they." When defendant was asked about his original statement regarding the fire, he would not answer the officers' questions.
The State's expert in fire origin and cause determination, James Pharr, testified that in his investigation he found heavy damage to the exterior and interior walls and heavy charring of the stud walls at 429. He concluded the fire originated in the left rear room of the house and that the "fire resulted from an open flame being applied to materials that were available in that room."
According to Pharr, the fire at 429 radiated to a house next door, 401 Queens Court. On the side of that house facing 429, the fire caused melting and charring of the vinyl siding, burning of insulation and burning and melting of insulation covering electrical wires. The damage that occurred to 401, Pharr opined, was "directly because of the fire that occurred at 429."
Billie McConnaughey, formerly Billie Teasley, said that during the argument between defendant and Curry, she heard defendant say, "I'll burn this _____ f______ house down." Then, defendant went into the bedroom and when he came out she smelled smoke. She stated that Williams went to check and when he opened the door to the room "all the fire just jumped out."
Williams also testified that he heard defendant threaten to burn the house down during the argument. When Teasley smelled smoke, he went to the back bedroom, opened the door and saw a small fire on some pillows. A draft, caused by opening the door, caught the fire and it "just went everywhere."
At trial, defendant testified that to provide light to look for a weapon, he set fire to paper torn from a book. Then Williams entered the room, punched him in the face and knocked him down. Defendant denied setting fire to the pillow.
I.
Defendant's sole argument on appeal is that the trial court erred in denying his motion to dismiss the charge of second degree arson. In ruling on a defendant's motion to dismiss, the trial court must determine if there is "substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." State v. Olson, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Id. The trial court, after viewing the evidence in the light most favorable to the State, id., "need only satisfy itself that the evidence is sufficient to take the case to the jury; it need not be concerned with the weight of that evidence." State v. Franklin, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990).
"Arson is defined at common law as the `willful and malicious burning of the dwelling house of another person.'" State v. Hodge, 121 N.C. App. 209, 210, 465 S.E.2d 14, 15 (1995) (citation omitted). In regards to arson, "willful and malicious" means the burning must be committed "voluntarily and without excuse or justification and without any bona fide claim of right." State v. White, 291 N.C. 118, 126, 229 S.E. 2d 152, 157 (1976) (quoting State v. White, 288 N.C. 44, 50, 215 S.E. 2d 557, 561 (1975)). "Specific intent is not an essential element of the crime of common-law arson." Id.
Our North Carolina statutes define two degrees of arson:
If the dwelling burned was occupied at the time of the burning, the offense is arson in the first degree and is punishable as a Class D felony. If the dwelling burned was unoccupied at the time of the burning, the offense is arson in the second degree and is punishable as a Class G felony.
N.C. Gen. Stat. § 14-58 (2003). See State v. Barnes, 333 N.C. 666, 677, 430 S.E.2d 223, 229, cert. denied, 510 U.S. 946, 126 L. Ed. 2d 336, 114 S. Ct. 387 (1993). Defendant admitted he voluntarily set fire to pages torn from a book in the house where his brother lived. In addition, the testimony from Detective Hord and Sergeant Henderson tended to show that defendant set fire to a pillow in his room. According to Pharr's testimony, the fire at 401 Queens Court started "directly because of the fire that occurred at 429." The house at 401 Queens Court, which belonged to Williams, was unoccupied since the evidence tended to show that at the time of the fire Williams was at 429 Queens Court and his wife was at work. Therefore, the State presented substantial evidence of each element of the claim.
Defendant argues the trial court erred in instructing the jury that he could be found guilty of second degree arson if his acts at 429 Queens Court proximately caused damage at 401. Although he admits the court used Pattern Jury Instructions 215.12, he claims footnote four reveals a flaw in the trial court's instructions. Footnote four provides:
A person can burn a dwelling "maliciously" in one of two ways: a) he may intentionally and without justification or excuse burn the dwelling itself, or b) he may intentionally and without justification or excuse burn some structure or place that is not a dwelling which creates an unreasonable danger of fire to the dwelling.
Defendant incorrectly argues that in this case neither alternative is applicable. The first alternative is applicable because defendant did "willfully and maliciously" burn the dwelling at 401 Queens Court. North Carolina case law requires that to meet the "willful and malicious" requirement for arson, the burning must be committed only "voluntarily and without excuse or justification." White, 291 N.C. at 126, 229 S.E.2d at 157. Therefore, section (a) of the footnote applies in this case.
Contrary to defendant's argument, he can be charged with both acts of arson without violating the double jeopardy clause because he burned two separate dwellings. Defendant also contends the due process clause is implicated because he was punished for damage he did not intend. However, specific intent is not required, only that defendant voluntarily started a fire without justification. Because there was substantial evidence of each element of second degree arson, there was no error in denying defendant's motion to dismiss.
II.
Pursuant to N.C. Gen. Stat. § 15A-1415(b)(3), plaintiff filed, in this Court, a motion for appropriate relief alleging that he was denied effective assistance of counsel due to his counsel's failure to adequately explain the terms of a plea arrangement which the State offered him, and his counsel's failure to explain to him the meaning of an Alford plea. He also alleged the trial court failed to adequately explain the maximum sentence to which defendant was exposed if convicted. N.C. Gen. Stat. § 15A-1418(a) (2003) provides that when a case is in the appellate court for review, a motion for appropriate relief based on the grounds found in N.C. Gen. Stat. § 15A-1415 must be made in the appellate division. In deciding on a motion for appropriate relief, the appellate court must decide:
whether the motion may be determined on the basis of the materials before it, or whether it is necessary to remand the case to the trial division for taking evidence or conducting other proceedings. If the appellate court does not remand the case for proceedings on the motion, it may determine the motion in conjunction with the appeal and enter its ruling on the motion with its determination of the case.
N.C. Gen. Stat. § 15A-1418(b) (2003).
After reviewing the motions and the supporting briefs, we conclude the record before this Court is insufficient to develop the facts necessary to a determination of the issues which defendant seeks to raise in his motion for appropriate relief. Therefore, we must remand this case to the trial court for such further proceedings as may be required for a determination of defendant's motion for appropriate relief.
No error in defendant's trial; remanded for a determination of defendant's motion for appropriate relief.
Judges CALABRIA and GEER concur.
Report per Rule 30(e).