STATE OF NORTH CAROLINA v. WAYNE EDWARD REAVIS

No. 7322SC638

(Filed 26 September 1973)

1. Arson § 2— sufficiency of indictment

Indictment was sufficient to charge defendant with the unlawful burning of a mobile home used as a dwelling, notwithstanding reference was made in the indictment to the wrong statute.

2. Arson § 4— sufficiency of evidence

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of burning a mobile home used by his wife as a dwelling where it tended to show that a fire broke out in a bedroom of the trailer shortly after defendant was in the bedroom, that the fire did not originate in the electrical wiring system, that the heaviest damage was in the floor of the closet of the bedroom, that the only item present in the closet after the fire was a small amount of charred debris, that defendant and his wife were experiencing marital difficulties and that defendant had threatened to burn up his wife and everything she had.

3. Arson § 3; Criminal Law § 50— expert opinion testimony — cause of fire

In a prosecution for the unlawful burning of a dwelling, the trial court erred in the admission of opinion testimony by the State's arson expert as to the cause of the fire where the witness failed to qualify his opinion with sufficient facts based on his personal observations.

4. Criminal Law § 83— arson case — incompetency of wife to testify against husband

Defendant's wife was not a competent witness against defendant in a prosecution for burning a mobile home used by the wife as a dwelling, notwithstanding defendant and his wife were experiencing marital difficulties and defendant had assaulted his wife the day preceding the fire. G.S. 8-57.

APPEAL by defendant from *Rousseau, Judge,* 16 April 1973 Session of Superior Court held in DAVIE County.

Defendant was charged in a bill of indictment which contained the following language: ". . . Wayne Edward Reavis unlawfully and wilfully did feloniously and wantonly set fire to and burn a structure, to wit: a mobile home [which was owned by his wife Faye Reavis], used as a dwelling house . . . . "

Defendant pleaded not guilty and was found guilty as charged. From a judgment imposing a prison sentence of not

less than seven years nor more than ten years, defendant appealed.

*Attorney General Robert Morgan, Deputy Attorney General R. Bruce White, Jr., and Assistant Attorney General Alfred N. Salley for the State.*

*Powell and Powell by Harrell Powell, Jr., and Edward L. Powell for the defendant appellant.*

HEDRICK, Judge.

[1] Defendant first assigns as error the denial of his motion to quash the bill of indictment. A motion to quash, *inter alia,* challenges the sufficiency of the bill of indictment to charge an offense. *State v. Mayo,* 267 N.C. 415, 148 S.E. 2d 257; *State v. Faulkner,* 241 N.C. 609, 86 S.E. 2d 81. The requirements for a sufficient bill of indictment are as follows: (1) The offense is charged in a plain, intelligible, and explicit manner; (2) The offense is charged properly so as to avoid the possibility of double jeopardy; and (3) There is such certainty in the statement of the accusation as to enable the accused to prepare for trial and to enable the court, on conviction or plea of *nolo contendre* or guilty to pronounce sentence according to the rights of the case. *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897; *State v. Greer,* 238 N.C. 325, 77 S.E. 2d 917. A careful review of the bill of indictment in this case reveals compliance with the aforementioned requisites and even, assuming *arguendo,* that reference to the wrong statute is made in the bill of indictment as defendant contends, this is not a fatal flaw in the sufficiency of the bill of indictment. *State v. Smith,* 240 N.C. 99, 81 S.E. 2d 263; *State v. Anderson,* 259 N.C. 499, 130 S.E. 2d 857. See also 4 Strong, N.C. Index 2d, Indictment and Warrant, Sec. 9, pp. 347-48.

[2] Next, defendant asserts that the trial court erred in the denial of his motion for judgment as of nonsuit. The competent evidence offered by the State (defendant offered no evidence) tends to show the following:

Shortly after three o'clock (p.m.) on 9 June 1972, defendant, his mother, and Tammy Reavis, his twelve year old daughter, arrived at the mobile home. Defendant and his mother entered the trailer several times while Tammy remained outside. Tammy testified:

State v. Reavis

"The last person to go in the trailer was my father, Wayne Reavis. Before the last time he went in the trailer, my grandmother asked him if he wanted her to go in and help; he said NO. He went in the trailer by himself at that time. * * * My father had been drinking that day. He had been drinking Vodka; he come out of the trailer with a glass of it. He kept his clothes that he brought out in the back bedroom of the trailer, which was the bedroom that was burned. He kept them in the closet of the back bedroom. I went in the closet after the fire was put out and there were NO clothes in the back closet."

Defendant, his mother, and Tammy left the mobile home around 3:20 p.m. Within five minutes of their departure a next door neighbor observed smoke pouring from the back bedroom of the trailer and promptly telephoned another neighbor who in turn called the fire department.

After making an inspection of the burned premises, the fire chief contacted an arson specialist to investigate the source of this incident. A special agent of the SBI conducted an investigation two or three hours after the alleged events occurred. The agent testified that a thorough check of the electrical wiring system eliminated this as a possible origin of the fire; that the heaviest damage was in the floor in the closet of the bedroom, and that the only item present in the closet at the time of his inspection was a small amount of charred debris.

Further testimony revealed that defendant and his wife, Faye Reavis, were experiencing marital problems, and were in the process of seeking a separation. In fact, on the day prior to the alleged burning defendant was in the county jail as a result of making an assault on his wife. R. W. Groce, an officer on the Mocksville police force, stated that while defendant was at the jail "he was raising a lot of racket, cursing [and] hollering" and defendant was overheard to say "if they didn't let him out that Goddamn jail he would burn it down when he got out and he was going to burn that Goddamn bitch up and everything she had".

The foregoing evidence was sufficient to require submission of the case to the jury. This assignment of error is overruled.

[3] Next, defendant maintains that the trial court erred in failing to exclude the opinion testimony of Ed Sneed, the SBI agent tendered as an arson expert. While it is true as defendant contends that the general rule seems to be, that both expert and nonexpert opinion evidence as to the cause of a fire in an arson case should be excluded, See Annot. 131 A.L.R. 1113, 1136 (1941) we have found no North Carolina decision which adopts this proposition in whole. Defendant relies chiefly upon *State v. Cuthrell*, 233 N.C. 274, 63 S.E. 2d 549; however, we feel this case is distinguishable from the present case in that *Cuthrell* involved only the exclusion of the opinion testimony of a nonexpert witness and not the exclusion of the testimony of an expert witness. In fact, our Supreme Court, in *State v. Moore*, 262 N.C. 431, 137 S.E. 2d 812, indicated that it is proper for an expert witness to express an opinion as to the origin of a fire. The approach in *Moore, supra*, is quite consistent with the one outlined in *Teague v. Power Co.*, 258 N.C. 759, 129 S.E. 2d 507, wherein Justice Sharp wrote:

> "The cases cited by the defendants, in which opinion evidence as to the cause of fires or other damage to property was excluded, involved the opinions of nonexpert or lay witnesses which, the Court said, were worth no more than any one else's. [citation omitted] In such instances, lay witnesses are not permitted to invade the prerogative of the jury. [citation omitted] However, an expert in a particular field may give his opinion, based on personal observation or in answer to a properly framed hypothetical question, that a particular event or situation could or could not have produced the result in question. [citation omitted]"

Even though agent Sneed was found to be an expert, we are of the opinion that his testimony as to the origin of the fire should have been excluded because the agent failed to qualify his opinion with sufficient facts based on his personal observations. An opinion, even of an expert, in order to have probative value, must be grounded on more than a mere assertion without sufficient factual support. See Stansbury's N. C. Evidence, Brandis Revision, Vol. 1, Sec. 132, p. 426, n. 68.

[4] By his next assignment of error defendant contends that the trial court erred in allowing the defendant's wife to testify against him in this criminal proceeding. More specifically, de-

State v. Reavis

fendant's wife testified that defendant called her on the phone and said: "You son of a bitch — I'm out of jail; I'm going to burn this trailer to the ground." G.S. 8-57 in effect forbids the testimony of one spouse *against* another in criminal proceedings unless the case falls within one of the exceptions enumerated in the statute. The State argues that this testimony should be admitted because of the exceptions which exist to the general rule in the case of assault upon the witness spouse and trespass upon the separate residence of the witness spouse; however, we are unable to agree with the State's interpretation of this case as falling within one of the exceptions to the general rule as provided in G.S. 8-57. Furthermore, the State asserts that *State v. Alford,* 274 N.C. 125, 161 S.E. 2d 575 controls this case and therefore, overriding questions of public policy where serious crimes are involved outweigh any conceivable interest the public might have in precluding the spouse's testimony. It is our opinion that *State v. Alford* is distinguishable from the present case in that *Alford* involved the testimony of a *divorced* spouse and the conclusion of Justice Bobbitt (now Chief Justice) writing for the court that when the marital relationship terminates, the asserted reasons for G.S. 8-57, to wit: the preservation of the sanctity of the home and the fictional oneness of husband and wife, are no longer pertinent. See Stansbury's N. C. Evidence, Brandis Revision, Vol. 1, Sec. 59, p. 188, n. 21. In the instant case there is evidence that defendant and his wife were experiencing less than harmonious marital relations; however, we do not derive from *Alford* any intent to include such circumstances within the scope of that decision. Quite to the contrary, we believe this case is more closely aligned with *State v. Kluttz,* 206 N.C. 726, 175 S.E. 81, a decision in which the court held that the wife of the defendant was not competent to testify against her husband in a prosecution for the burning of their house. Therefore, we conclude that prejudicial error was committed in allowing the wife to testify against her spouse.

We refrain from discussing defendant's other assignments of error as the asserted errors might not recur upon retrial.

For the reasons stated, defendant is entitled to a

New Trial.

Judges BRITT and VAUGHN concur.